UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARILYNN E. TARRANCE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) )   Case No. 1:24-cv-00317-TWP-TAB |
| FRANCISCAN ALLIANCE INC. Hospital, | ) ) ) |
| Defendant. | ) |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR ADDITIONAL EXTENSION OF TIME**

This matter is before the Court on Defendant Franciscan Alliance Inc.'s ("Franciscan") Motion for Summary Judgment (Dkt. 47) and *pro se* Plaintiff Marilynn Tarrance's ("Tarrance") Motion for Extension of More Time to Respond (Dkt. 59). Tarrance initiated this Title VII action following her formal discipline and termination from Franciscan. She alleges that her manager selectively enforced Franciscan's jewelry/piercing policies against only Tarrance based on her race and color. After Tarrance failed to respond to the summary judgment motion, the Court granted her permission to file a response by no later than November 13, 2025. No response has been filed; instead Tarrance filed a motion requesting an additional extension of time (Dkt. 59). For the following reasons, Franciscan's Motion for Summary Judgment is **granted**, and Tarrance's request for additional time to respond is **denied**.

### I.   BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to Tarrance as the non-movant. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Although granted leave to file a belated response, Tarrance failed

to respond to the summary judgment motion by the extended due date; accordingly, the facts alleged in the motion are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b). "Even where a non-movant fails to respond to a motion for summary judgment, the movant still has to show that summary judgment is proper given the undisputed facts." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (citation modified).

A.     **Tarrance's Job and Franciscan's Policies**

Tarrance is a Black woman (Dkt. 1-1) who began working for Franciscan in March 2021 as a food service employee (Dkt. 47-2 ¶ 5). She worked at a hospital café greeting customers, making and stocking food, and cleaning. *Id.* ¶ 6; (Dkt. 47-1 at 37:24–38:5). Tarrance's supervisor was Theresa Vogel ("Vogel"), and her manager as of October 2022 was Christina Wang ("Wang") (Dkt. 47-3 ¶ 2; Dkt. 47-2 ¶ 2).

In her role as a food service associate, Tarrance was required to follow the policies in Franciscan's employee handbook, Franciscan's Dress Code & Personal Appearance Procedure (the "Dress Code Procedure") (Dkt. 47-2 at 9–12), its Employee Personal Hygiene and Uniform Code (the "Hygiene Code") (*id.* at 14–18), and applicable Indiana Department of Health regulations ("IDOH Regulations"), 410 Ind. Admin. Code 7-26-146. The Dress Code Procedure, which applies to all Franciscan employees, provides that "jewelry of any type which may present a safety hazard to patients, coworkers or equipment should not be worn. Facial jewelry, including tongue, lip, eyebrow, or nose jewelry are to be removed." *Id.* at 10. The Hygiene Code, which applies to food service employees, similarly provides that "[i]n the food service areas of the department where food or dishes are handled . . . no jewelry except for a simple, smooth ring may be worn. This restriction covers all forms of jewelry (i.e., . . . earring, facial piercings, . . . etc.)." *Id.* at 16. The IDOH Regulations likewise provide that "[e]xcept for a plain ring, such as a wedding band, food

2

employees may not wear jewelry. . . . while preparing food." 410 Ind. Admin. Code 7-26-146. The Hygiene Code permits "non-visible body piercing and/or tattoos," but the Dress Code Procedure and IDOH Regulations do not (Dkt. 47-2 at 16).

The day Tarrance was hired, she acknowledged in writing that she received, understood, and agreed to abide by the Hygiene Code (Dkt. 47-2 ¶ 12). She reaffirmed her understanding of the Hygiene Code in September 2021 and January 2023 (Dkt. 47-1 at 66–68). Tarrance further acknowledged in writing that she "underst[ood] that [she] cannot wear a watch and any jewelry (including body piercing items) other than a smooth surface ring/band while working in the food service operation," and that "[t]he only jewelry to be worn in the kitchen is a simple smooth wedding band." *Id.* at 57–59.

**B.      Tarrance's Progressive Discipline and Termination**

Tarrance has ear piercings and cheek piercings. *Id.* at 30, 49. When she began working at Franciscan, a COVID-19 mask mandate was in place, and her cheek piercings were not visible under her mask (Dkt. 47-2 ¶ 15). Although the Hygiene Code does not state that concealed facial piercings are allowed, Tarrance was verbally told that they can be covered using Band-Aids, but she had no need to cover them because her mask covered them and they were not exposed (Dkt. 47-1 at 48). Wang did not notice Tarrance's cheek piercings until January 2023, when she observed Tarrance remove her mask while working in the café (Dkt. 47-2 ¶ 14).

Shortly thereafter, Tarrance began receiving directives from Vogel and Wang about her ear and cheek piercings. On January 30, 2023, Vogel asked Tarrance and a Black co-worker, Jasmine Walker ("Walker"), to remove their earrings (Dkt. 47-3 ¶ 4). Both women removed their earrings, but an hour later, Wang saw that Tarrance had put her earrings back in. *Id.*; (Dkt. 47-2 ¶ 16). Wang and Tarrance then discussed the Dress Code Procedure, Hygiene Code, and IDOH Regulations. During that discussion, Wang advised Tarrance that her facial piercings violated Franciscan's

policies and IDOH Regulations and would need to be removed. *Id.* ¶¶ 17–18. In response, Tarrance told Wang that she would need a month to have the facial piercings removed. *Id.* ¶ 18.

Later that same day, Vogel asked Tarrance to attend a meeting with Human Resources about recent issues between Tarrance and her supervisors (Dkt. 47-3 ¶ 5). During that meeting, there was a discussion about how a former food services supervisor had asked Tarrance to remove her earrings and facial piercings (Dkt. 47-6 ¶¶ 5–7). Tarrance expressed her belief that she was being singled out for violating Franciscan's policies, and that she thought other coworkers (including Walker) were receiving favorable treatment. *Id.* ¶¶ 8–9.

A couple days later, on February 1, 2023, Wang and Vogel met with Tarrance to advise her that she would have thirty days (until March 2, 2023) to remove her facial piercings (Dkt. 47-2 ¶ 19; Dkt. 47-3 ¶ 6). On February 8, 2023, Wang issued Tarrance a written disciplinary reminder for her refusal to remove her earrings, despite prior verbal requests (Dkt. 47-2 ¶ 20). Wang also reminded Tarrance of her March 2, 2023 deadline to remove her cheek piercings.

The March 2, 2023 deadline passed, and Tarrance did not remove her facial piercings. *Id.* ¶ 21. As a result, Wang issued Tarrance a second written disciplinary reminder. *Id.* ¶ 22. When asked why she had not removed her facial piercings, Tarrance stated that she needed to travel to have the piercings removed. *Id.* ¶ 24. In an attempt to allow Tarrance time to comply with Franciscan's policies, she was given until March 10, 2023, to remove her facial jewelry. Tarrance was told that if she failed to remove her facial jewelry by that deadline, she would receive further discipline. *Id.*

Tarrance did not remove her facial jewelry by March 10, 2023, so Wang issued a third and final written disciplinary reminder. *Id.* ¶ 25. With the final reminder, Tarrance was again given more time—until March 17, 2023—to remove her facial jewelry. Tarrance was again told that if

4

she did not meet that deadline, she would face further discipline. *Id.* ¶ 26. By March 24, 2023, Tarrance still had not removed her facial jewelry, so Franciscan terminated her employment for her refusal to comply with the Dress Code Policy, Hygiene Code, and IDOH Regulations. *Id.* ¶ 27.

**C.    Procedural History**

Tarrance filed a Charge of Discrimination with the Equal Employment Opportunity Commission and received her right to sue letter on November 21, 2023 (Dkt. 1 at 6). She initiated this federal lawsuit in February 2024 against Franciscan and Wang. *Id.* Following a jurisdictional screening by the Court, Tarrance's claims against Wang were dismissed without prejudice, and her claims against Franciscan were allowed to proceed (Dkt. 11; Dkt. 23; Dkt. 30).

Franciscan filed its Motion for Summary Judgment on June 16, 2025, along with a Notice Regarding Right to Respond (Dkt. 49) as required by Local Rule 56-1(k). The Notice identified Tarrance's deadline of July 17, 2025, to respond to the Motion for Summary Judgment, and stated that any response "must also comply with all other portions of Federal Rule of Civil Procedure 56, and with Local Rule 56-1." (Dkt. 49 at 1–2). Tarrance did not file a response by the deadline. On October 28, 2025 she filed a Motion for Permission (Dkt. 56) in which she represented that she called the Clerk's office on Friday, October 24, 2025, and first became aware of "documents that were sent on 06/16/2025" and learned that she "didn't have a response submitted." *Id*. at 2. The Court granted her permission to file a response by no later than November 13, 2025. No response has been filed; instead, Tarrance filed a motion requesting an additional extension of time (Dkt. 59).

**II.    SUMMARY JUDGMENT STANDARD**

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a

matter of law. *Id.*; *Pack v. Middlebury Cmty. Schs.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). The court cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

The Court will first address Tarrance's Motion for an extension of time.

### III.     <u>MOTION FOR EXTENSION OF MORE TIME TO RESPOND</u>

Tarrance did not file her response to the summary judgment motion by the extended November 13, 2025 deadline. Instead, on November 13, 2025, she filed a Motion for Extension of More Time to Respond (Dkt. 59). Local Rule 6-1(c)(2) and (3) provides that "a request for an extension of time . . . must state the original deadline and the requested deadline" and state the reasons for the requested extension and *explain why those reasons constitute good cause* (emphasis added). Tarrance asks for an enlargement of an additional seven days because this case is complex and she is self-represented. *Id*.

Tarrance has not shown good cause for an additional extension of time to respond. Although Tarrance asserts that this case is complex, she has competently litigated this action as a self-represented litigant, and has not renewed her motion for assistance with recruiting counsel.[1] While the courts are required to give liberal construction to *pro se* pleadings, it is well established that *pro se* litigants are not excused from compliance with procedural rules. *See McNeil v. United States*, 508 U.S. 106, 113, (1993) (noting that the Supreme Court has "never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"). Further, the Supreme Court has noted, in the long run, experience teaches that strict adherence to the procedural requirements is the best guarantee of evenhanded administration of the law. *Id.* Accordingly, Tarrance's self-represented status, alone, does not show good cause.

As noted above, Franciscan filed its Motion for Summary Judgment on June 16, 2025, along with a Notice Regarding Right to Respond (Dkt. 49) as required by Local Rule 56-1(k). Over

---

[1] In the February 21, 2024 Entry Screening Complaint and Denying Motion for Assistance as Premature, the Court instructed that "Plaintiff may file a renewed motion requesting the Court's assistance in recruiting counsel as the case develops." (Dkt. 11). No such motion has been filed.

four months later, Tarrance filed a Motion for Permission (Dkt. 56), in which she represented that she called the Clerk's office on Friday, October 24, 2025, and first became aware of "documents that were sent on 06/16/2025" and learned that she "didn't have a response submitted." *Id*. at 2. Based on Tarrance's representations and her *pro se* status, the Court found "excusable neglect" and gave Tarrance until November 13, 2025, to file a response (Dkt. 57). The Court noted, however, that it appeared Tarrance had access to the docket in this case, as she "had been actively participating in this action" by making filings. *Id*. Thereafter, Franciscan filed a Response to Tarrance's Motion for Permission (Dkt. 58). Franciscan provided evidence that it received a certified mail return receipt for the Summary Judgment filings—which included the Notice regarding Right to Respond to and Submit Evidence in Opposition to Motion for Summary Judgment [Doc. 49]—containing Ms. Tarrance's signature dated June 20, 2025 (Dkt. 58-1).

In granting the first extension of time, the Court admonished Tarrance that because this matter is set for a final pretrial conference on January 28, 2026, and trial on February 23, 2026, "to ensure prompt resolution of Franciscan's Motion for Summary Judgment, which has now been pending for more than four months, she must file her response in opposition to the Motion for Summary Judgment by no later than Thursday, November 13, 2025." (Dkt. 57 at 2). The summary judgment motion has now been pending for five months. The Court also forewarned Tarrance that "[t]here will be no further extension of these briefing deadlines." *Id.* Under the circumstances here, Tarrance has not shown good cause for an additional extension of time to file a response. Therefore, her motion is **denied**.

### IV.     SUMMARY JUDGMENT DISCUSSION

Tarrance claims that Wang selectively enforced Franciscan's jewelry/piercing policies against her because of her race and color. On summary judgment, Franciscan argues that its food safety policies are applied equally to all employees, and that Tarrance was disciplined and

8

ultimately terminated because of her continued refusal to comply with those policies, and not for any discriminatory reason. Franciscan also argues that Tarrance's color discrimination claim must be dismissed because she failed to exhaust her administrative remedies as to that claim.

Title VII makes it "unlawful . . . for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). The Seventh Circuit has held that "all discrimination cases present the same basic legal inquiry: At the summary-judgment stage, the proper question to ask is 'whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the [plaintiff's] discharge or other adverse employment action.'" *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 499 (7th Cir. 2017) (emphasis omitted; alteration in original) (quoting *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)). However, as a means of "organizing, presenting, and assessing circumstantial evidence in frequently recurring factual patterns found in discrimination cases," courts employ the well-known burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017).

Under *McDonnell Douglas*, a plaintiff must first show that (1) she is a member of a protected class; (2) she performed her job to her employer's expectations; (3) she suffered an adverse employment action; and (4) a similarly situated individual outside her protected class received more favorable treatment. *Ferrill*, 860 F.3d at 500. If the plaintiff demonstrates these elements, then "the burden shifts to the employer to come forward with a legitimate, nondiscriminatory reason for the challenged employment action." *Id.* "If the employer does this,

9

then the burden shifts back to the plaintiff to produce evidence establishing a genuine dispute of fact about whether the employer's reason was a pretext for discrimination." *Id.*

Franciscan argues that Tarrance cannot satisfy the second and fourth elements—that Tarrance was performing her job to Franciscan's satisfaction, and that similarly situated individuals received better treatment. The Court will address the second and fourth elements in turn.

A.      **Performance of Job to Franciscan's Expectations**

Franciscan argues that the undisputed evidence shows that Tarrance repeatedly refused to comply with Franciscan's policies on jewelry and facial piercings, and the Court agrees (Dkt. 48 at 15–19, 20). Tarrance does not dispute that she was aware of, and agreed to comply with, Franciscan's Dress Code Procedure, Hygiene Code, and IDOH Regulations. In her deposition, Tarrance argues that her facial piercings should not have been considered violations of Franciscan's policies because her piercings were covered by her mask (Dkt. 47-1 at 68:8–15, 95:20–25). However, she admits in her deposition testimony that there were at least three occasions on which her mask was removed and her facial piercings were uncovered. *Id.* at 148:1–11. And moreover, to the extent Tarrance's cheek piercings are "non-visible" piercings under the Hygiene Code, those types of piercings are still prohibited by Franciscan's Dress Code Procedure and IDOH Regulations. (Dkt. 47-2 at 10); 410 Ind. Admin. Code 7-26-146.

Tarrance does not dispute that she failed to remove her piercings after receiving several requests, disciplinary reminders, and extensions of time to do so. Because it is undisputed that Tarrance repeatedly failed to comply with Franciscan's jewelry and piercing policies, no reasonable jury could find that Tarrance was meeting Franciscan's legitimate job performance expectations. *See, e.g.*, *Anders v. Waste Mgmt. of Wis.*, 463 F.3d 670, 676 (7th Cir. 2006) ("It cannot be disputed that his behavior . . . failed to meet [the employer's] 'legitimate expectations' as established by its Code of Conduct and Workplace Violence policy."); *Hall v. Vill. of Flossmoor Police Dep't*, No.

11 C 5283, 2012 WL 6021659, at *5 (N.D. Ill. Dec. 4, 2012) ("An employee who violates his employer's established policies fails to perform adequately or meet his employer's legitimate expectations.").

## B. Similarly Situated Individuals

Franciscan also argues that Tarrance "has not identified (indeed, cannot identify) a single similarly-situated employee outside of her race who was treated more favorably than her." (Dkt. 48 at 20). Tarrance identifies five similarly situated food service employees that she believes received favorable treatment. However, as Franciscan argues, the undisputed material facts show that each of these employees either *was* disciplined by Franciscan or was not observed violating Franciscan's policies.

"The similarly-situated analysis calls for a flexible, common-sense examination of all relevant factors. All things being equal, if an employer takes an action against one employee in a protected class but not another outside that class, one can infer discrimination." *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012) (citation modified). "In the usual case a plaintiff must at least show that the comparators (1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* at 847 (citation modified).

First, Tarrance identifies a white coworker, Lilliana Armstrong ("Armstrong"). Tarrance argues that Armstrong wore a cross necklace to work but was never disciplined for wearing it (Dkt. 47-1 at 74:17).[2] However, Wang avers that she has never seen Armstrong wearing a cross necklace,

---

[2] Tarrance has no personal knowledge of Franciscan's employee records, so her assertions regarding other employees' disciplinary histories are not admissible to prove that those employees were or were not disciplined. Fed. R. Evid. 602. The Court considers these statements only as showing Tarrance's *beliefs* regarding other employees' discipline.

11

and that following Tarrance's complaints, Wang went to observe whether Armstrong was wearing a necklace at work, and Armstrong was not (Dkt. 47-2 ¶ 33). Wang did observe Armstrong wearing nail polish in 2023, in violation of the Hygiene Code, and asked Armstrong to remove the nail polish. Armstrong promptly complied. *Id.* ¶ 34. Because Armstrong, unlike Tarrance, was not observed wearing jewelry at work and complied with Wang's request to remove her nail polish, she is not comparable to Tarrance for purposes of showing discrimination.

Second, Tarrance identifies a Hispanic/Latina coworker, Alicia Todorovich ("Todorovich"), who has a septum piercing in violation of the Dress Code Procedure, Hygiene Code, and IDOH Regulations (Dkt. 47-1 at 75:3–9). Although Tarrance believes that Todorovich was never disciplined for having a nose piercing, *id.* 74:19–25, 75:1–7, in early 2023, Todorovich was asked by her manager to remove her nose jewelry (Dkt. 47-4 ¶ 4). Shortly after this request was made, Todorovich left her employment with Franciscan without notice. *Id.* Todorovich is not comparable to Tarrance because, unlike Tarrance, Todorovich did not remain employed with Franciscan long enough to receive progressive discipline for failing to remove her facial piercing.

Third, Tarrance identifies another Hispanic/Latina employee, Elia Montanez ("Montanez"), who Tarrance believes was never asked to take off her artificial nails or nail polish, which violate the Dress Code Procedure and Hygiene Code (Dkt. 47-1 at 97:18–25). In early 2023, though, Wang asked Montanez to remove her artificial nails, and Montanez promptly complied (Dkt. 47-2 ¶ 35). Montanez is not comparable to Tarrance because, based on uncontested evidence, Montanez complied with Wang's request to remove her artificial nails.

Fourth, Tarrance contends that a white coworker, Eric Amon ("Amon"), wore a watch "all the time" but was never asked to remove it (Dkt. 47-1 at 74:14–18). However, Wang has never seen Amon wearing a watch, and following Tarrance's complaints, she went to observe whether

12

Amon was wearing a watch while at work, and he was not (Dkt. 47-2 ¶ 36). Amon is not comparable to Tarrance in this case because Wang never observed Amon wearing jewelry at work.

Lastly, Tarrance claims that she was treated unfairly compared to Walker, a Black woman, because Walker was purportedly allowed to wear false eyelashes in violation of the Hygiene Code. However, in 2023, Walker was asked to remove her artificial eyelashes. Shortly thereafter, Franciscan terminated Walker's employment for a different reason (Dkt. 47-2 ¶ 4).

Importantly, if Walker had *not* been disciplined, as Tarrance contends, that fact would weigh against Tarrance's race and color discrimination claims. Indeed, in her deposition, Tarrance explained that she thought her discipline was motivated by her type of piercing, or by a personal grudge Wang had against her, rather than her race or color. Tarrance stated:

> [I]t wasn't so much as if they were Black or if they were white. It's, you have on earrings and nobody's saying anything to you. . . . [Nothing was said to Walker] because she wore lashes all the time. . . . So she should have at least had at least one corrective action, and she did not . . . .
>
> . . . I don't know what [Wang's] problem was, but she has some type of problem and it seemed like it was a personal problem because [she] went for my attendance to my facial piercings. It's like [she] can't find anything so [she] had to find something, so then [she] went with the facial piercings. . . .
>
> [She's] taking action with me -- yeah, [me and Walker are] the same color -- [she's] taking the same action with me. [Walker] might as well not be that color. Apparently it doesn't pertain to her either. Everything was enforced with me. I guess everything pertains to me only. . . .
>
> So to me, . . . [Walker] is [Walker]. [She] got away with it. But why? She's Black too. What's the difference? We're human. So I really don't see a color. But I feel like this: We're human. We're all in the same department. What is the problem? How come everything is just being enforced for one person when . . . I'm telling you about the other people who's doing the same thing and going on with the same thing but you totally ignore it.

(Dkt. 47-1 at 140:17–19, 140:25–141:3, 141:10–16,145:4–23). Tarrance's comparison to Walker therefore fails to show that Franciscan's disciplinary actions were motivated by race or color.

In sum, the employees who *did* violate Franciscan's policies—Walker, Armstrong (for nail polish), Todorovich, and Montanez—were told to remedy their violations, and they either did so promptly or separated from Franciscan before further disciplinary action might have been taken. And Franciscan did not observe the other employees—Armstrong (for her necklace) and Amon—violating Franciscan's policies.

Tarrance has not identified any similarly situated employee outside her protected class who received favorable treatment, and nothing in the record indicates that Tarrance's disciplinary reminders or termination were motivated by her race or color. The uncontroverted evidence shows only that Franciscan consistently applied its jewelry and piercing policies to employees, both inside and outside of Tarrance's protected class, who Franciscan observed violating those policies.

C.     **Consideration of All Evidence**

Finally, when evaluating a race discrimination claim, a district court must determine "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race caused" the adverse action. *Ortiz*, 834 F.3d at 765. "Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself." *Id.* While the plaintiff may cite to direct or circumstantial evidence of discrimination to show causation, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981).

Based on the totality of the evidence, no reasonable jury could infer that Tarrance was disciplined or terminated because of her race or color. Franciscan's statement of material facts not in dispute, which is supported by evidence and unopposed by Tarrance (even in her deposition testimony), shows that Tarrance's adverse employment actions were the result of her continued refusal to adhere to Franciscan's policies regarding jewelry and piercings. A wealth of evidence

14

demonstrates a clear causal connection between Franciscan's proffered, non-discriminatory reason for Tarrance's discipline and termination, and Tarrance has not raised any genuine dispute to the contrary. Based on the undisputed material facts, no reasonable jury could find in Tarrance's favor.

Accordingly, the Court **grants** Franciscan's Motion for Summary Judgment. The Court need not, and does not, reach Franciscan's additional argument regarding failure to exhaust remedies.

## V.    CONCLUSION

For the reasons discussed above, Defendant Franciscan Alliance Inc.'s Motion for Summary Judgment, Dkt. [47], is **GRANTED**. Plaintiff Marilynn Tarrance's Motion for Extension of More Time to Respond, Dkt. [59], is **DENIED**.

The trial dates are **VACATED**, and final judgment will issue under separate order.

**SO ORDERED**.

Date:   11/17/2025

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

MARILYNN E. TARRANCE
2190 N. Riley Ave.
Indianapolis, IN 46218

Amy Joan Adolay
KRIEG DEVAULT LLP (Carmel)
aadolay@kdlegal.com

Hilary Kathryn Leighty
Krieg DeVault LLP
hleighty@kdlegal.com